May it please the court, I'm Steven Aeschrecker on behalf of the United States. The district court abused its discretion in this case in quashing the grand jury subpoena to the public defender. Are you conceding the district court had discretion to quash the subpoena? No, we're not. What we're saying is essentially it's the same thing. I think what we're saying is that the district court made an error. It's not the same thing. I mean, you just told us the district court abused its discretion. That assumes the district court had discretion and abused it. That's why I want to know exactly what your contention is. Our contention is that the district court made an error of law. It had no discretion to exercise. Right. The district court made an error of law in imposing on the government a compelling needs standard, the need to show a compelling purpose for the grand jury subpoena. The cases on which it based that burden, that standard, Lilly, Demore, Walters, none of those cases involved a grand jury subpoena, first of all, and most importantly. Second of all, they were based on pecunious defendants' Sixth Amendment right to counsel. Let me then interrupt you for a second because I have an off-the-wall question, and I concede it's off-the-wall. This really started out being about somebody named Michael Casey. Is that right? Yes. And what's happened to Michael Casey? Michael Casey, on the underlying, he was indicted for ecstasy. He pleaded guilty to those charges in April 2004. 2004, and what's happened to him? This is all a matter of judicial notice. What happened to him? I believe he's in jail. Sentenced for those charges? The last time I checked on PACER, which was on Thursday, the sentencing had not occurred but is scheduled to occur tomorrow. I know the defense can probably answer that better than I can, but the sentencing has been continued several times. What I'm driving at, is this really a case of controversy? Is the federal government intending to pursue this man for failure to appear, having received his guilty plea on these felonies and getting ready to send him to prison? Are you really going to indict him on failure to appear, or is this a case of controversy? I believe that we do intend to seek an indictment, yes. So it is a case of controversy, yes. With all the pressing work on the United States Attorney's Office and the Department of Justice that we read about every day, chasing terrorists and Al-Qaeda across the world, the complaints about no resources, you're telling us that this United States Attorney intends to indict this man for failure to appear after he's already been convicted of the underlying crime? Yes. That will be a first. Well, I would submit that failing to appear and disrespecting the court in that manner is worthwhile to pursue. Gee, it seems like, well, what I was accustomed to when I was in practice and also as a trial judge, was you make sure the defendant is always there at those sorts of proceedings, so that he can't say, I didn't know when the date was, because he was right there with his own ears, and it looks like this was just an unusual bit of laxness by the prosecution in not insisting the defendant be present. I don't know. It's sort of hard to believe you chase it further. The U.S. Attorney's Office, I mean. I thought that the cases did pretty well establish that the district court has some discretion with regard to grand jury subpoenas for defense attorneys because of the potential for interfering with the defendant's Sixth Amendment rights. And it looks like this district judge said, well, you've got two other sources for the information, the attorney's statement, and I think it was a memorandum or an affidavit that she told them the date, and the defendant's own mother's statement that she told them the date, and that's enough to get an indictment. All you're looking for is an indictment. We simply don't know that. Well, it's up to the grand jury whether it's enough. Sure, it is. You get an indictment on hearsay, and you can get an indictment on the mother's statement, even though she later recants it. We don't dispute that. But we would simply submit that, especially the Klein case from the Seventh Circuit, Tornay from this circuit, Reyes from the Fifth Circuit. All Tornay holds, if I recall right, which I may not in a lot of cases, is that the defendant doesn't have an absolute right not to have his attorney subpoenaed to appear in front of the grand jury. Right. Well, sure. Well, at least with respect to Klein and especially Brandsburg v. Hayes in the Supreme Court, the question is it's up to the jury to decide how much evidence is enough. And we would submit that, first of all, the public defender's affidavit. Sure, that's true, but that really doesn't speak to the issue before us, which is whether the district court abused its discretion. I believe, though, that Tornay, Klein, Doe, and Reyes speak to the issue. I mean, his discretion doesn't have to be to give the government the max. He's supposed to balance the defendant's interest with the government's. Right. Well, that would be Rule 17c-2, though, and that's not the legal standard that the district court applied. The legal standard the district court applied was compelling need. That shifted the burden erroneously from the party seeking to avoid compliance with the subpoena, which is what the Supreme Court held in de inicia was required by Rule 17c-2. It shifted that burden to the government. I don't know if he says compelling need. What he says is, but in this case, I'm just going to find the government has sufficient other evidence available to it to procure the indictment if it chooses to go forward, and I'm therefore going to quash the subpoena on the basis of my belief. I'll just say on a policy basis in accord with the U.S. Attorney guidelines. Well, and then in the district court's order denying reconsideration, then it made clear that it wasn't applying a compelling need standard. And then it did, again, reiterate that holding that it made in that hearing, which was, and then now that I'm applying that compelling need standard, I find that the government doesn't have a compelling need because it has other evidence available to it. Where does he apply a compelling need standard? In the. What page of the excerpt? I believe it's at appendix page 63 to 64. It should be in that general vicinity. The district court says. What do you think it would take to constitute abuse of discretion? Give me an example of what you would think would constitute that. Well, this case is the perfect example. This case? Yeah. Oh, I see. Well. Any time you want to bring a defendant's lawyer before the grand jury, you can do it. No, that's not true. Oh, that's false. False. No, no. Well, Rule 17, C2 does give the district court the call in the first instance. It does give the district court discretion in the first instance to make that decision. But the district court has to apply the proper standard of law. And as Judge Kleinfeld pointed out earlier, abuse of discretion review is in no review. So what's the proper standard? The proper standard is Rule 17, C2, unreasonable or oppressed. So you want us to send it back and have the district court then apply the right standard? Well, we recognize that that would be the appropriate course in the normal case. But because the grand jury's term expires on December 3rd, which is just over a month from now, we're not sure that there's time to do that. And we believe the record is clear. Who do you work for? The Department of Justice Criminal Division. Yeah. And who is Mr. Mark Blackman? That's me. It's a misapplication. I'm actually Mr. Casey's lawyer for these purposes. I'm actually on the wrong side of the key in your discussion. That's what I thought. I'm still concerned that there's no case or controversy here. It's astonishing to me to believe that the United States attorney is going to indict this guy for failing to appear when they've got him in a bucket on the underlying charges. And unless there's somebody that shows up from the United States attorney's office and says, we are going to prosecute this guy, there's no case or controversy. There's an abstraction and a fight over a principle, but there's no real case or controversy. I will ask the U.S. attorney's office to file an affidavit if that's necessary for this court to go forward. Their intent is to do so. They subpoenaed Ms. Bergeson with that intent in mind to seek evidence about whether she told Mr. Casey's trial date so that the grand jury would know whether there was a knowing violation. You can get an indictment on this case easily without her testimony. Easily. We don't know that. It may be the case. The grand jury turns you down a whole lot, does it? Sorry? The grand jury turns you down all the time? With an authorized admission from the lawyer? And the guy's own mother? The case law is clear that the courts aren't to speculate about that. It seems silly to me, frankly. I mean, it seems like you're kidding us. The judge is supposed to make a balancing kind of judgment, and you're saying, well, one thing he has to balance is that unless we have all the evidence possible, we're afraid the grand jury will reject an indictment like they do maybe once in 100 or 1,000 presentations. It's so rare. And then when I look at what the judge said, I looked at what you referred me to, he says he does use the phrase that you referred to, but he doesn't use it at the beginning of the analysis. He uses it in the middle. First he says, what will happen to the attorney-client relationship? And he says it will be severed. And then he says because the court has found the attorney-client relationship would be severed, the government must show a compelling purpose. But it's not an exclusive focus on the government's purpose. Instead, he says, this fact-intensive inquiry requires the court to balance the grand jury's need for Bergeson's testimony versus the interference that would have on the attorney-client relationship. And so it looks like even though he uses the word, all it is is balancing. And all you're saying is, well, maybe this would be the case that I've never actually seen, but it could happen logically that the grand jury would say the lawyer's own statement and the mother's own statement that basically convict her son aren't enough. We want to have the lawyer tell us again. Well, respectfully, then, the question for this court is whether it was harmless error, whether the court was actually applying the standard of Rule 17c2. But again and again you see in the opinion the district court says the government has failed to carry its burden of showing a compelling need. And so I don't believe that this court can be confident that the district court applied the proper legal standard. Now, of course, then the question becomes, well, maybe he actually applied Rule 17c2 in a backdoor manner some way, and then it's harmless error. But I just don't believe you can do that with this opinion. I think you do see compelling. Yeah, you do hate to waste everybody's time where a judge has done the right thing and just hasn't used the right buzzwords. What 17c2 says is the court, quote, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive. And it looks like here the judge exercised discretion  So I don't see what the violation is of Rule 17c2. The district court did not find that the public defender had met the burden of showing that it was unreasonable or oppressive and didn't use that language in the opinion. What's so important about this case that the Department of Justice is courting a Ninth Circuit opinion? This is a case where the district court is inquiring into how much evidence is enough. And it's a question of, in some sense, it's a question of separation of powers. For the courts to, and with all due respect, it's not a question for the courts, how much evidence is enough to go forward? And this court's decision in Chanin makes that clear, that those overtones are there. Anybody ever tell you in law school bad facts make bad law? Yeah, I've heard that. I think Judge Trott meant risking in Ninth Circuit opinion. Yeah, risking. I look at this as somebody who has been a criminal defense lawyer as well as a judge, and I think, boy, the government could have taken me off any case. Respectfully, though, we believe the law is on our side with Doe and Klein and Reyes. And Kopelman from the Eighth Circuit, we believe, is square on, straight on the facts. Are the U.S. attorneys' regulations on your side? We believe that they are. In this case, the assistant attorney general for the criminal division was required to approve the subpoena. He did so. And the question under the U.S. attorney manual is it's a balancing test. It's the same sort of balancing test that 17C2 is about. Thank you, counsel. Thank you. Good afternoon. Steve Wax appearing on behalf of Ms. Bergeson. Mark Blackman would probably take a couple of minutes to say a few words on behalf of Mr. Casey. Your Honors, we believe that the district court here properly exercised its discretion and went through a very careful balancing analysis both in the initial ruling, which is set out in Excerpt 53 through 55, and in the written opinion on the motion for reconsideration. What you see is that Judge Hagerty looked at the relevant case law and distinguished the Gray and the Freeman cases. He cited Rule 17C in the opinion on reconsideration. He went through carefully what he called at the end of the opinion the very specific factual circumstances presented here. He was fully aware that this case involved two different representations at the time that he rendered his decision. The underlying drug case was still in full swing as it is today, as Mr. Blackman will address shortly. And the grand jury matter as a separate matter was before him. The two records were combined, as you can see from the excerpt. He was fully cognizant of the discretion that he had. While he used the phrase compelling need, the opinions both show that what he did was engage in the balancing that Rule 17 says he is supposed to engage in. To the extent that the government says that Mr. Casey had no interest at all in continued representation by Ms. Ferguson, it seems to us that the government is making an argument that runs directly counter to the Equal Protection Clause and the entire body of law that says that when a person has assigned counsel, that the responsibilities of assigned counsel are the same as and to be measured by the same tests as an attorney who is retained. Treats appointed counsel as fungible compared to retained counsel. Do you have anything else you'd like to tell us? I do not. I think Mr. Blackman would have one. All right. Reset the clock. The clerk will reset the clock. I don't want to take up any of the court's time unnecessarily, but I do think it is important to at least speak on behalf of the. A little louder, please. I don't want to take up the court's time unnecessarily, but I do think it is important. In addition to the institutional war that this case appears to represent, to at least have a word put in for the fact that the individual whose interests are most at stake, Mr. Casey here, does in fact have a vested interest in not having an existing relationship with an attorney he's come to trust disrupted by the government by unnecessarily creating a conflict that requires a breach in that relationship. And that's what this is about, and that's why Judge Hagerty correctly exercised his discretion. He didn't say the government can never put Ms. Bergeson in a grand jury if they really want to pursue this case. He just said you can't do it now. There's an existing case where an existing representation which will be disrupted will be the consequence of that, and that doesn't fly. What he said was in the context of the compelling need is that, yes, you've demonstrated it's unreasonable and oppressive. Ms. Bergeson and Mr. Casey, by intervening, made that showing. Typically, that would be the end of the analysis. Motion granted. But here he then went on to say in the grand jury context, even when it's unreasonable and oppressive, you may still have to testify if there's a compelling need to do it. I mean, that's the balancing he's trying to go through. He goes the extra mile for the government, and he found that here it was unreasonable and there was no need. There was no need for that testimony at this time. And for Mr. Casey's specific situation, I don't know how far what is incorporated in the record or not. I know that the government in its excerpts included the clerk's record from the underlying case, which is not the clerk's record in this case. And if you consider the clerk's record in the underlying Casey case as part of the record here, then it would show that there has been a continuing battle in the underlying case over the application of not only the sentencing issue structurally, whether or not after Ameline, for example, there is or isn't government right to an impoundment of a sentencing jury, but the issue in the sentencing that's still pending before the court and which has been postponed yet again. And if this is outside the record, I apologize. But it is whether or not there is an enhancement available for the failure to appear. And, of course, that compounds the inquiry that you've been making about is this really a case in which it's clear that if the government proceeds to obtain an enhancement in some fashion for the obstruction of justice failure to appear, then that's the end of the case. But the key here is this was an effort by the government unnecessarily to disrupt an existing attorney-client relationship. And that is why Judge Hegarty was absolutely within his discretion in granting the motion. And that motion will be in recess until tomorrow morning at 9 o'clock. Thank you.
judges: Ferguson, Trott, Kleinfeld